**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| HAROLD JORDAN, )<br>　　　　　　　　　**Plaintiff,** )<br>v. )<br>　　　　　　　　　　　　　　　 )<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>　　　　　　　　　**Defendant.** ) | Case No. 07-2007 |

# REPORT AND RECOMMENDATION

In September 2006, Administrative Law Judge (hereinafter "ALJ") Gerard Rickert denied disability insurance benefits to Plaintiff Harold Jordan. The ALJ based his decision on findings that Plaintiff was not disabled within the meaning of the Social Security Act and he was capable of performing a significant number of jobs available in the national economy.

In January 2007, Plaintiff, acting *pro se*, filed a Complaint (#3) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the final decision by the Regional Commissioner of the Social Security Administration denying disability insurance benefits. In September 2007, Plaintiff filed a Motion for Summary Judgment (#11) and in October 2007, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#12). After reviewing the administrative record and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment **(#11)** be **DENIED**.

### I. Background

#### A. Procedural Background

Plaintiff applied for social security benefits in December 2005, alleging disability beginning March 16, 1999. Plaintiff later amended his onset date to January 2002. Plaintiff's

insured status for disability benefits expired on September 30, 2004, therefore he had to establish that he was disabled on or prior to that date.

The Social Security Administration denied his application initially and upon reconsideration. He appealed and ALJ Stewart Griffin held a hearing in September 2006. An attorney represented Plaintiff at the hearing. In September 2006, ALJ Rickert denied Plaintiff's application for benefits based on findings that Plaintiff was not disabled within the meaning of the Social Security Act and he was capable of performing a significant number of jobs that exist in the national economy. In November 2006, the Appeals Council denied Plaintiff's request for review and Plaintiff subsequently appealed the decision to this Court.

### B. Plaintiff's Medical Background

Plaintiff was forty-nine years old in September 2004 when his insured status for disability benefits expired. He was fifty-one years old at the time of the hearing. He has completed a high school equivalent education. He worked as a mental health technician from 1984 to 1996 and as a security guard from November 1998 to March 1999. (R. 199.) His job at the mental health facility involved restraining or subduing combative residents. As a result, he was injured several times. Plaintiff states that, in September 1995, he sustained injuries to his left shoulder, neck, lower spine, right hip, and left leg. He was referred for pain management, work hardening, and physical therapy. After six months of treatment, he was still unable to work and the Illinois State Retirement System placed him on retirement disability.

The following background is taken from the record, including medical records from August 2001 to July 2006.

Beginning in 2001, Dr. George Duncan became Plaintiff's treating doctor. (R. 136.) Every three to six months, Plaintiff sees Dr. Duncan for treatment for benign hypertension and osteoarthritis, as well as ailments unrelated to his application for benefits. (R. 161.) In 2001, Dr. Duncan noted that Plaintiff experiences chronic left shoulder pain due to an old injury;

however, both shoulders had good range of motion. (R. 136.) In April 2002, Plaintiff underwent a cardiac stress test because he had been experiencing chest pain and had an abnormal EKG. The stress test showed no ischemic changes or other indicators. (R. 123-24.) In July 2002, Dr. Duncan noted that Plaintiff's left hip was painful, "an old problem." (R. 184.) In May 2002, Plaintiff reported right hip pain and continued chest pain. (R. 134.)

In January 2003, Dr. Duncan noted that Plaintiff complained of neck/low back/right hip pain. (R. 184.) X-rays indicated intact articulation of the right hip and narrowing of the intervertebral disc space at L5-S1. The radiologist diagnosed degenerative disc disease at L5-S1. (R. 190.) In January 2004, Dr. Duncan noted that Plaintiff was experiencing restricted movement in both hips, left side spine tenderness, and pain when he moved his shoulders and neck. Dr. Duncan suspected that osteoarthritis caused these symptoms. Plaintiff was also significantly depressed, and the doctor prescribed an antidepressant. (R. 185.) In July 2004, an x-ray indicated a calcaneal spur. (R. 187.) In February 2005, Dr. Duncan noted that Plaintiff's left knee was tender, but observed no signs of internal derangement. (R. 186.) In September 2005, Plaintiff consulted with Dr. Duncan twice; once for cold symptoms, and once for his routine hypertension check-up. (R. 125-28.) Dr. Duncan noted that Plaintiff was alert and in no apparent distress. He had no leg pain when walking. An examination revealed no significant abnormalities, and his blood pressure was 143/87. He had normal posture, motor strength, sensation, reflexes, and range of motion in his joints. (R. 164-65.)

In October and December 2005, Plaintiff consulted Dr. Duncan for congestion and sinus problems. (R. 168-71.) In January 2006, Plaintiff consulted Dr. Duncan for congestion and allergy symptoms. (R. 172-73.) In February 2006, Plaintiff consulted Dr. Duncan for his blood pressure check-up. (R. 176-77.) In March 2006, Plaintiff consulted Dr. Duncan for a cough. (R. 178.) In June 2006, Plaintiff consulted Dr. Duncan for allergy symptoms and depression. At Plaintiff's request, Dr. Duncan referred him to Dr. Patil for depression. (R. 180-81.) In July 2007, Plaintiff consulted Dr. Duncan for sinus problems. He reported that he did not followup with Dr. Patil because he felt that he was doing better. (R. 183-84.)

A Psychiatric Review Technique form dated December 2005 indicated that Plaintiff sought disability based on depression.  (R. 140-53.)  The consultant concluded that the medical records contained insufficient information to determine whether Plaintiff was disabled due to depression prior to September 2005.

### C.  Testimony at the Hearing

At the hearing, Plaintiff testified that he has problems with his left shoulder, his back, a heart murmur, an injury to his left eye, arthritis in his lower back and wrists, and some problems with reading comprehension.  (R. 199-200.)  He takes a number of prescription medications for these conditions.  Plaintiff is right-handed.

Plaintiff testified that his shoulder problem interferes with daily activities.  He experiences constant lower back pain radiating down both legs.  He changes positions and takes medication to alleviate the pain.  He has had arthritis in his wrists for about a year (as of the hearing) and wears a splint on his right wrist to relieve the pain.  He has had difficulty reading all his life, but it has gotten worse with age.  (R. 202-4.)

Plaintiff does not do housework, shopping, mowing, or yard work.  He does use a home computer and enjoys playing pinochle on it.  He used to enjoy fishing and bowling but he cannot do those activities any more.  He does not socialize, belong to clubs, or go to church.  He watches TV a couple hours a day.  He can take care of his personal needs.  (R. 205-6.)  He has difficulty lifting things, for example, a gallon of milk, because it makes his back hurt.  He sleeps a lot because of the medications he takes, but he does not nap during the day.  Once or twice a week, his heart murmur causes him pain that lasts three to four minutes.  He finds it difficult to hold on to small objects and sometimes drops things.  He experiences pain when he lifts his arms above his head.  Some of his medications have side effects; one causes diarrhea and one makes him feel tired.  He has difficulty concentrating and being in crowds of people.  (R. 207-10.)  In 1996, Drs. Fletcher, Meyer, and Duncan told him that he could not work.  (R. 210.)

Dr. James Lanier, the vocational expert (hereinafter "VE"), also testified at the hearing. The ALJ asked him to consider an individual in his lower forties, with Plaintiff's education and past relevant work experience, who was limited to lifting and carrying no more than ten pounds frequently or twenty pounds occasionally and who cannot reach overhead with the nondominant arm. The VE testified that this individual could not perform Plaintiff's past work but he could perform a number of light and sedentary jobs that exist in the economy. (R. 212-13.)

The ALJ then limited the hypothetical individual to work that requires no prolonged or frequent standing or walking, and the VE testified that the individual could still perform the sedentary jobs. (R. 213.)

Plaintiff's attorney asked the VE whether any jobs would be available if the hypothetical individual was limited to no more than occasional contact with the public. The VE testified that some of the jobs would be available. The VE also testified that there were jobs available even if the individual could do only occasional fingering and handling. However, if he had to miss three or more days of work per month, he would probably not be able to work. (R. 214.)

### D.  The ALJ's Decision

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 416(i)(1). To determine disability, the Commissioner uses a five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, that is, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) if the claimant cannot perform the past work, whether the claimant can do other jobs that are available in the national

economy. The claimant bears the burden of production and persuasion at steps one through four. Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

The ALJ's decision followed this five-step process. At the first step, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the onset of disability. At the second step, the ALJ determined that Plaintiff's impairments of degenerative joint disease of spine and multiple joints, hypertension, left eye injury, and depression are considered "severe" within the meaning of the Social Security Act. At the third step, the ALJ determined that Plaintiff's condition did not meet or medically equal any of the impairments listed in the regulations. At step four, the ALJ determined that Plaintiff was not able to perform his past relevant work. At step five, the ALJ determined that Plaintiff had the residual functional capacity to perform work activities except that he is limited to lifting and carrying twenty pounds occasionally and ten pounds frequently, and no overhead work with his nondominant (left) arm. Based on this RFC, Plaintiff is able to perform a significant number of jobs available in the national economy despite his impairments. Finally, the ALJ stated that Plaintiff's statements regarding his limitations are not totally credible. As a result, the ALJ found that Plaintiff was not eligible for social security benefits. (R. 16C-16D.)

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility findings and will not overturn them unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992). However, when credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review the ALJ's credibility determination. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

### III.  Analysis

Plaintiff argues that the ALJ erred by denying him benefits for the following reasons: (1) he meets the criteria for disability "through the State and Workman's Compensation level" (#11, p. 1); (2) three out of four doctors chosen by the Illinois State Retirement System have assessed his physical condition and determined that he was unfit for employment; (3) the occupations suggested by the VE are not realistic options in the area where he lives; and (4) mental health medications do not always require counseling to be used in tandem.

Plaintiff's first argument is based on a disability assessment by agencies other than the Social Security Administration. On this topic, the Regulations provide as follows:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504. Thus, as Defendant noted, the fact that other agencies have found Plaintiff "disabled" is not binding on the Social Security Administration.

Plaintiff's second argument is also unavailing. The ultimate decision of whether a claimant is disabled for purposes of disability benefits is a question reserved for the ALJ, based on his review of all the pertinent information in the record. *Bartrom v. Barnhart*, 33 Fed. App'x 818, 820-21 (7th Cir. 2002); *see also* 20 C.F.R. § 416.927(e)(1) ("We are responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability . . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.")

Furthermore, as the ALJ stated in his decision, Dr. Duncan has not opined that Plaintiff is unable to perform sedentary or light duty work, as defined in the Social Security Regulations, nor does the record contain any evidence to support such a conclusion. The claimant bears the responsibility of establishing that he is disabled; that means that he must furnish medical and other evidence that the ALJ can use to reach conclusions about his medical impairments. 20 C.F.R. § 404.1512(a). Absent evidence in the record supporting Plaintiff's claim that he can do no work, the Court cannot conclude that the ALJ erred by finding Plaintiff capable of doing light or sedentary work.

Plaintiff also states that the ALJ seemed to question the fact that Plaintiff had not sought counseling or therapy for his depression. Specifically, the ALJ stated as follows:

> In assessing the claimant's mental problems, the undersigned notes that the claimant had been treated by his general practitioner, Dr. Duncan, with medication for depression. He has not required inpatient psychiatric treatment or even counseling for his mental problems, and he has been diagnosed with an affective disorder, depression.

(R. 16A.) Plaintiff notes that many doctors prescribe medication for depression without requiring or suggesting that a patient obtain therapy. The Court notes that the ALJ acknowledges that Plaintiff suffers from depression. Nevertheless, the fact that Plaintiff has not obtained counseling indicates that his mental problems are not so severe that they would warrant seeking additional therapy. The Court has reviewed the ALJ's assessment of Plaintiff's mental

**8**

disorders and concludes that the ALJ did not err by observing that Plaintiff has not sought or received counseling for his mental impairments.

Finally, Plaintiff argues that the occupations suggested by the VE are not realistic options in the area where he lives. Specifically, Plaintiff contends that there are no valet or valet parking jobs within a sixty-mile radius of Decatur, where Plaintiff lives. Defendant responds that the VE did not include valet or valet parking in the list of jobs that the hypothetical individual could perform. Notwithstanding that fact, unfortunately for Plaintiff, the Regulations provide that a claimant is not entitled to disability benefits if he is capable of working but remains unemployed because he cannot find work, few jobs exist in the local area, or no job openings exist at a particular place of employment. 20 C.F.R. § 404.1566(c). The Regulations provide that "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

While one can sympathize with the difficulties a claimant may experience in finding satisfactory work that accommodates his limitations, the Commissioner is permitted to grant benefits only to those who are incapable of engaging in any substantial gainful activity by reason of a medically determinable physical or mental impairment. 42 U.S.C. § 423(d); *see Jones v. Shalala*, 10 F.3d 522, 526 (7th Cir. 1993). If jobs exist which a claimant could perform, he will not be entitled to disability benefits, regardless of the availability of those particular jobs in a particular area. *See* 42 U.S.C. § 423(d)(2)(A). Difficulties in sustaining gainful employment may arise from prevailing economic conditions, and that problem cannot be addressed through the provisions of the Social Security Act. Congress created a scheme for granting disability benefits to specified individuals and those who do not have a disability, as defined by Congress, cannot qualify for disability benefits. *Jones*, 10 F.3d at 526.

### IV.  Summary

For the reasons set forth above, the Court recommends **DENYING** Plaintiff's Motion for Summary Judgment **(#11)**.  The parties are advised that any objection to this recommendation must be filed in writing with the Clerk within ten (10) working days after service of a copy of this recommendation.  *See* 28 U.S.C. 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 15th day of January, 2008.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE